## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

RALPH CAROL RHODABACK,

      Petitioner,

v.                                                       Case No. 3:22-cv-455-TJC-MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## **ORDER**

### I.    **Status**

      Petitioner Ralph Carol Rhodaback, an inmate of the Florida penal
system, initiated this action by filing a pro se Petition for Writ of Habeas Corpus
Pursuant to 28 U.S.C. § 2254. See Doc. 1. He challenges three state court (Duval
County, Florida) judgments of conviction for two counts of burglary of a dwelling
and one count of attempted burglary of a dwelling. He is serving a cumulative
seventy-year term of incarceration as a Prison Releasee Reoffender and a
Habitual Felony Offender. Respondents filed a Response. See Doc. 6 (Resp.).[1]
The Court provided Petitioner with an opportunity to file a reply (Docs. 4, 9),

_____

[1] Attached to the Response are various exhibits (Docs. 6-1 to 6-25). The Court
refers to the exhibits as "Resp. Ex."

but he did not do so.[2] This case is ripe for review.[3]

## II.    <u>Governing Legal Principles</u>

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>cert.</u> <u>denied</u>, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. <u>See</u>

---

[2] In January 2023, Petitioner filed a document indicating he did not receive a copy of the response. <u>See</u> Doc. 9. As such, the Court directed Respondents to send Petitioner a copy of the Response and exhibits. <u>Id.</u> Later, Petitioner filed a notice advising that he had received a copy of the Response exhibits, but he did not receive a copy of the Response. <u>See</u> Doc. 11. As such, in February 2023, Respondents filed a notice indicating they mailed another copy of the Response to Petitioner. <u>See</u> Doc. 12.

[3] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1318 (11th Cir. 2016) (citing <u>Chavez v. Sec'y Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Id.</u> The Court finds that "further factual development" is unnecessary. <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

<u>Marshall v. Sec'y Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's decision to qualify as an adjudication on the merits. <u>See</u> <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011). When the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

<u>Wilson v. Sellers</u>, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." <u>Id.</u> § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v.

4

<u>Washington</u>, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. <u>Strickland</u>, 466 U.S. at 687.

Notably, there is no "iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward v. Hall</u>, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in <u>Strickland</u>: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

"The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying

the claim. <u>Richter</u>, 562 U.S. at 105. As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" <u>Daniel v. Comm'r, Ala. Dep't of Corr.</u>, 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting <u>Strickland</u>, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." <u>Id.</u> (citing <u>Richter</u>, 562 U.S. at 105); <u>see also</u> <u>Evans v. Sec'y, Dep't of Corr.</u>, 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004).

## III.  **Factual and Procedural History**

The following summary of the trial proceedings is taken from Petitioner's initial brief filed on direct appeal:

By way of three Informations filed in the Circuit Court for Duval County on December 15, 2015, the State charged [Petitioner] as follows:

1. Burglary of a dwelling (Case No. 16-2015-CF-010332[)];

2. Burglary of a dwelling (Case No[]. 16-2015-CF-010334[)];

3. Attempted Burglary, possession of contraband, resisting arrest without violence, one count of attempted burglary of a dwelling and one count of resisting arrest without violence (Case No[]. 16-2015-CF-010333[)].

Resp. Ex. F at 6 (record citations omitted). The trial court then granted the state's motion to consolidate the three charges for trial. And later granted Petitioner's motion to consolidate for purposes of appeal. Id. The following evidence was presented at trial:

**Monica Denmark**. On November 23, 2015, Monica Denmark lived in a house in Jacksonville with her husband and two children. On that day she was at home by herself. About 9 a.m., as she folded some laundry, she heard someone ring her doorbell five or six times over the course of several minutes. She was upstairs, and when she looked out a window, she saw a "scraggly older white male" with a beard ringing the bell. He was wearing a hat and a dark blue blazer.

Getting no response, the man, whom Denmark identified at trial as Rhodaback, went to the back of the house. Thinking that was "kind of weird" she went downstairs and saw him trying to get into the house by a sliding glass door. Upset, Denmark began screaming and cussing at him and told him she was going to call the police, which she did. He fled, and she got into her pickup truck to follow him. She soon saw him riding a bicycle, but lost him. She returned home, and by that time the police had shown up. She gave them a description of the man. After they departed, she left her home with her husband, who had returned. About an hour later, she saw Rhodaback a second time near where she lived. He was talking with two men in a red "Magnum" who were apparently following him. Eventually they began to chase Rhodaback, and at some point he ditched the bike and fled into a nearby wooded area.

[**Officer Chad Harris** testified that Denmark] called the police again, who returned, and they put out an alert or BOLO for him, which included that he was carrying a black backpack. Soon they saw the defendant, and [Officer Harris] told him to stop. He did not, but fled. [Officer Harris] gave chase and soon had run him to the ground. He was exhausted. When arrested, he told [Officer Harris], "I'm glad it's over, I'm tired of breaking into people's houses for a living." He also did not have a backpack. Searching him,

7

[Officer Harris] found a "ball mass" of mainly women's jewelry in one of his pockets.

Later [Officer Harris] learned of another burglary, this one at the home of Wendy Sikes. When shown the jewelry taken from Rhodaback, she identified some of it as hers.

**Lorine Higginbotham**. Lorine Higginbotham lived within a mile of Denmark, and on the morning of November 23, 2015 she had left home about 6:30 or 7 a.m., locking the front door. She returned about noon, very tired, and went to a room to rest. She got up after a few minutes and then realized her home had been ransacked because "everything was turned upside down, scattered all over the bed, all over the floor." She left her home, called her daughter, who called the police. Some medications, camera equipment, pendants, money,[ ] and jewelry had been taken and were later taken from Rhodaback.[]

An intruder had gotten into Higginbotham's home through a window, which had been broken.

**Wendy Sikes**. On November 23, 2015, Wendy Sikes lived in a two story house with her 15 year old son and fiancé, which was within a mile or so of where Denmark and Higginbotham lived. She left about 6:30 with her fiancé while her son stayed home asleep with headphones on to block noises from trains as they rumbled near his home.

She returned home about 3:45 that afternoon and was met by her son who said the glass door to the patio had been broken. She went upstairs and noticed that her bedroom had been ransacked[.] Everything was a mess. Wedding rings were missing as well as other jewelry. The police were called and they showed her jewelry they had taken from Rhodaback. Some of it was hers.

**Wesley Sikes**, [Wendy Sikes's] 15 year old son woke up about 11 a.m. and quickly noticed the broken glass, and thought that their dog had broken a window. The first he learned of any burglary was when his mother began yelling when she went into her bedroom.

[**Detective Vernon Richardson** testified that] [w]hen

arrested[,] Rhodaback had some jewelry and medications on him, the medication belonging to Ms. Higginbotham. She, along with Ms. Denmark, identified other items taken from the defendant as theirs. Denmark also identified him as the burglar when presented with a photo spread by the police.

The defendant did not have a backpack when he was arrested, but about a week later [Detective Richardson] returned to the woods the defendant had been seen running into on November 23. After a search he found a pack matching the one Rhodaback had been seen wearing[.] It was less than two miles from Denmark's house. It had money, jewelry, and a "lot of stuff."

. . . .

[Petitioner] was found guilty as charged on all counts, with the jury specifically finding as to the burglaries that the structure[s] he entered w[ere] [] dwelling[s].

The defendant filed a motion for new trial, which the court denied. It adjudicated him guilty of all the offenses and also found him to be a[] habitual felony offender and Prison Release[e] Reoffender. It then sentenced him as follows:

1. Burglary (Case No. 16-2015-CF-010332): 30 years in prison as a[] Habitual Felony Offender and Prison Release[e] Reoffender with a minimum mandatory sentence of 15 years;

2. Burglary (Case No. 16-2015-CF-10334): 30 years in prison as a[] Habitual Felony Offender and Prison Release[e] Reoffender with a minimum mandatory sentence of 15 years.

3. Attempted Burglary and resisting arrest (Case no. 16-2015-CF-010333): 10 years in prison for the attempted burglary with a concurrent sentence of 290 days in jail for resisting arrest. The court also found the defendant to be a[] Habitual Felony Offender.

Resp. Ex. F at 7-10 (record citations and paragraph enumeration omitted).

**IV. <u>The Petition</u>**

**a. Ground One**

Petitioner argues that his original trial counsel, Kevin Jenkins, was ineffective for withdrawing his pretrial "Suggestion of Mental Incompetence to Proceed" motion. Doc. 1 at 7-9. According to Petitioner, upon receipt of that motion, the trial court granted trial counsel's request for Petitioner to undergo an expert evaluation; but, for some unknown reason, counsel withdrew the motion before the evaluation was conducted. <u>Id.</u> at 8.

Petitioner raised this claim with the state court in his Florida Rule of Criminal Procedure 3.850 motion. Resp. Ex. L at 10. Upon receipt, the trial court found this claim insufficiently pled and directed Petitioner to amend his Rule 3.850 motion. <u>Id.</u> at 33-35. Petitioner again raised this argument in his amended Rule 3.850 motion. <u>Id.</u> at 51-53. The trial court summarily denied the claim as follows:

> In these Grounds, Defendant suggests the trial court erred by failing to hold a competency hearing within twenty days of its order appointing the expert to evaluate him and counsel was ineffective for withdrawing Defendant's suggestion of mental incompetence as well as for failing to ensure the trial court held the competency hearing within twenty days.
>
> Initially, this Court [notes that] claims of trial court error are not cognizable in a Rule 3.850 motion. <u>Swanson v. State</u>, 984 So. 2d 629, 629 (Fla. 1st DCA 2008) (citing <u>Hodges v. State</u>, 885 So. 2d 338, 366 (Fla. 2004)). Accordingly, to the extent this claim rests on that basis, the ground is not cognizable.

>        Moreover, this Court finds the claim to be insufficiently pled
> as a ground of ineffective assistance of counsel. Defendant fails to
> allege sufficient prejudice as required by <u>Strickland</u> and fails to
> allege that he was indeed incompetent as required by <u>Luckey v.
> State</u>, 979 So. 2d 353, 354 (Fla. 5th DCA 2008). As this Court has
> already granted Defendant the opportunity to amend this claim,
> this Court is not required to give Defendant any additional
> opportunity. Fla. R. Crim. P. 3.850(f)(3); <u>Spera v. State</u>, 971 So. 2d
> 754, 761 (Fla. 2007) (holding "the trial court abuses its discretion
> when it fails to allow the defendant at least one opportunity to
> amend the motion.") (emphasis added).

Resp. Ex. L at 72-73. Petitioner appealed, and the First District Court of Appeal per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. O.

The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. In applying that deference, the Court defers to the state court's finding that even assuming deficient performance, Petitioner fails to establish prejudice. Under the prejudice prong here, Petitioner must show "there was a reasonable probability that he would have received a competency hearing and been found incompetent had counsel requested the hearing." <u>Lawrence v. Sec'y, Fla. Dep't of Corr.</u>, 700 F.3d 464, 477 (11th Cir. 2012). Under this standard, the prejudice prong of the ineffective assistance claim demands the same showing as that under a substantive competency claim. Notably, Petitioner must demonstrate he was actually incompetent at the time of trial. <u>Id.</u> Petitioner fails to make that showing.

Here, the record shows that during a pretrial hearing, trial counsel advised the trial court that he was withdrawing the suggestion of incompetence and requested a continuance to complete depositions. Resp. Ex. B at 199-200. During that pretrial hearing, Petitioner addressed the trial court and advised that he had no objection to trial counsel's request for a continuance and explained that he understood that the continuance would waive his speedy trial rights. Id. at 198. Petitioner did not object to trial counsel's decision to withdraw the suggestion of incompetency and nothing in the record reflects Petitioner was substantively incompetent at that time. Indeed, Petitioner points to no evidence suggesting otherwise and he fails to even allege that he was actually incompetent to stand trial. To that end, upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of Strickland, and it is not based on an unreasonable determination of the facts in light of the evidence presented to the state court. Ground One is denied.

**b. Ground Two**

Petitioner alleges that his second trial attorney, Kathryn B. Fuller, was ineffective for failing to file a motion for new trial based on the trial court's failure to hold the required competency hearing before trial under Florida Rule of Criminal Procedure 3.210(b). Doc. 1 at 11-12.

Petitioner raised this claim in his amended Rule 3.850 motion. Resp. Ex.

L at 53-57. The trial court summarily denied the claim as follows:

> Defendant alleges counsel was ineffective for failing to file a motion for new trial based on the trial court never holding a competency hearing.

> A competency hearing is mandatory if there are reasonable grounds to suggest a defendant is not competent to proceed with trial. Brooks v. State, 180 So. 3d 1094, 1095 (Fla. 1st DCA 2015). However, "the trial court must independently determine that there are reasonable grounds to question the defendant's competency before the obligation to hold a competency hearing arises." Walker v. State, 237 So. 3d 1162, 1164 (Fla. 1st DCA 2018) (citing Rodgers v. State, 3 So. 3d 1127, 1132 (Fla. 2009)). A trial judge is not obligated to accept a defense attorney's representations regarding the competency of a defendant but should consider them alongside all other relevant circumstances. Id. (citation omitted).

> Here, counsel withdrew his suggestion of incompetence under a month after he filed it. No other suggestion was ever filed by counsel. Instead, while making argument at sentencing, counsel stated: "[Defendant], as you have observed, is a very nice man, very respectful, was easy to work with, other than the negotiations, that I understood." This comment indicates that counsel was able to work with Defendant throughout the case and that Defendant presented himself appropriately in court. Thus, unless the judge saw independent signs of incompetence, which Defendant does not allege, the court was not required to hold a competency hearing. Accordingly, any such argument in the motion for new trial would have been properly denied, and counsel cannot be deemed ineffective for failing to raise that argument. Defendant is, therefore, not entitled to relief on this basis.

> While not the same claim, this Court notes that in Defendant's Original Motion he alleged the trial court erred in denying trial counsel's motions for judgment of acquittal and motion for new trial because the verdict was contrary to the weight of the evidence and contrary to the law. Defendant abandoned this allegation within his Amended Motion. However, in an abundance of caution this Court addresses the allegation.

Again, allegations of trial court error are not cognizable in the instant Motion. Moreover, a defendant further cannot challenge the sufficiency of the evidence against him in such a motion. <u>See</u> <u>Betts</u> <u>v. State</u>, 792 So. 2d 589, 590 (Fla. 1st DCA 2001) ("To the extent that the allegations challenged the factual basis and sufficiency of the evidence, such claims cannot be raised in a Rule 3.850 motion, especially where (as occurred in the instant case) a direct appeal was taken.") (citation omitted). Accordingly, Defendant is not entitled to relief on this basis.

Resp. Ex. L at 73-74. Petitioner appealed, and the First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. O.

The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. In applying that deference, the Court again defers to the state court's finding that nothing in the record suggests that either trial counsel or the trial court knew or witnessed signs of incompetency such that they had to request or hold a competency hearing. Indeed, following jury selection, the trial court conducted a colloquy with Petitioner, during which Petitioner made clear he was satisfied with his attorney's performance so far and advised he had nothing to address with the court at that time. Resp. Ex. D at 169. Following the state's case, the trial court conducted another colloquy with Petitioner about whether he wished to testify on his own behalf. <u>Id.</u> at 343. During the exchange, Petitioner coherently responded to the trial court's questions, advised that he made the decision to not testify, explained that he was aware of his seven prior felony convictions, and that he had enough time to consult with his attorney about his case and

that her performance was satisfactory. Id. at 347. Further, at his sentencing hearing, trial counsel stated, "as you have observed, [Petitioner] is a very nice man, very respectful, [and] was easy to work with . . . ." Resp. Ex. A at 199. She also asserted that he participated in plea negotiations and displayed an understanding of the sentence he faced. Id. Thus, the record shows Petitioner could assist in his defense, understood the proceedings, and was competent to stand trial. He cannot show the requisite prejudice under Strickland. And thus, upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of federal law, and it is not based on an unreasonable determination of the facts in light of the evidence presented to the state court. Ground Two is denied.

### c. Ground Three

Petitioner contends that his second trial counsel, Fuller, was ineffective for misadvising Petitioner regarding the consequences of rejecting the state's twenty-year plea offer. Doc. 1 at 14-16. According to Petitioner, counsel erroneously told Petitioner that if he chose to go to trial, the maximum sentence he faced for all three convictions would be thirty-years, and she failed to adequately advise Petitioner that in actuality, he faced a maximum prison term of seventy-years.

Petitioner raised this claim in his amended Rule 3.850 motion. Resp. Ex.

L at 60. The trial court summarily denied the claim as follows:

> Defendant avers counsel was ineffective for failing to advise
> Defendant of the maximum sentences he faced. Specifically,
> Defendant asserts counsel informed him he was subject to thirty
> years at trial and never told him he could receive seventy years
> total between the three case numbers. Defendant alleges the State
> made an offer of twenty years with a fifteen year minimum
> mandatory, which counsel advised Defendant to accept, but that he
> rejected because she did not correctly advise him of his maximum
> possible sentence.

> To establish prejudice for this type of claim, it is necessary to
> show a reasonable probability that the end result of the criminal
> process would have been more favorable by reason of a plea to a
> lesser charge or a sentence of less prison time. Alcorn v. State, 121
> So. 3d 419, 430 (Fla. 2013). Specifically, the defendant must:

>> allege and prove a reasonable probability, defined as a
>> probability sufficient to undermine confidence in the
>> outcome, that (1) he or she would have accepted the
>> offer had counsel advised the defendant correctly, (2)
>> the prosecutor would not have withdrawn the offer, (3)
>> the court would have accepted the offer, and (4) the
>> conviction or sentence, or both, under the offer's terms
>> would have been less severe than under the judgment
>> and sentence that in fact were imposed.

> Id.

> At sentencing, counsel indicated that while the State had
> offered twenty years, Defendant was not willing to accept a plea for
> fifteen or twenty years and was specifically not willing to accept
> anything more than ten years because he did not believe he would
> live that long. Counsel stated he advised Defendant that based on
> the facts of the case he should negotiate with the State, but "he
> continued to say he does not want to be one of those people who dies
> in prison." This Court finds if Defendant was unwilling to accept
> anything more than ten years because he did not believe he would
> live for those ten years, then it is incredible to believe he would have
> accepted twenty years based on a possibility that he could serve

longer than that, for which he would also not believe he would live through. Accordingly, this Court finds Defendant cannot establish prejudice for this claim and is not entitled to relief.

Resp. Ex. At 76-77 (record citations omitted). Petitioner appealed, and the First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. O.

The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. In doing so, the Court defers to the state court's conclusion that Petitioner has failed to satisfy the purviews of Strickland. In the context of a rejected plea offer, the prejudice prong requires the movant to show "a reasonable probability that but for counsel's ineffectiveness: (1) 'the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)'; (2) 'the court would have accepted its terms'; and (3) 'the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.'" Osley v. United States, 751 F.3d 1214, 1222 (11th Cir. 2014) (quoting Lafler v. Cooper, 566 U.S. 156, 164 (2012)). But "after the fact testimony concerning [the movant's] desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer." Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991).

17

Here, the record shows Petitioner voluntarily rejected the state's twenty-year plea offer and fully understood the consequences of that rejection. Indeed, at sentencing, trial counsel advised the trial court that once she began representing Petitioner, she tried to negotiate a plea with the state and explained that Petitioner was seeking a ten-year term of incarceration. Resp. Ex. C at 212. According to counsel, because of Petitioner's Prison Releasee Reoffender status, the state was unwilling to accept a term of incarceration less than twenty-years. Id. Petitioner, however, rejected the state's offer and advised that he was not willing to accept a twenty-year sentence because he did not believe he would live that long. Id. Counsel also explained that when Petitioner rejected that offer, he was aware of his PRR and HFO status and the maximum sentence he faced. Id. at 214. As such, upon thorough review of the record and the applicable law, Petitioner fails to demonstrate that but for counsel's alleged error, he would have accepted the state's offer and not proceeded to trial. The Court finds that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of Strickland, and it is not based on an unreasonable determination of the facts given the evidence presented to the state court. Ground Three is denied.

### d. Ground Four

Petitioner contends that both his trial attorneys were ineffective for failing to conduct a DNA test of the backpack that law enforcement recovered

days after Petitioner's arrest and negate the state's position that the backpack

belonged to Petitioner. Doc. 1 at 18.

Petitioner raised this claim in his amended Rule 3.850 motion. Resp. Ex.

L at 61-62. The trial court summarily denied the claim as follows:

> Defendant alleges counsel was ineffective for failing to have the backpack police recovered from the woods tested for DNA to prove it was not Defendant's backpack. Defendant states he never possessed that backpack or the burglary items contained inside of it.
>
> At trial, the State presented the testimony of Monica Denmark ("Denmark"), who identified Defendant as the man who attempted to break into her back, patio door after she did not answer the door when he rung that for a few minutes. Denmark testified that she saw Defendant when he was trying to get into her house and a little bit later just outside of her neighborhood, and that each time, he had a dark backpack on. While Defendant did not have on a backpack when arrested, the lead detective went back and searched the area near where Defendant was arrested and found a backpack matching the description, which contained items from one of the victims. Items stolen from this victim's residence were also found on Defendant's person when he was arrested. Accordingly, there was plenty of evidence to link Defendant to the backpack had [it] not come back with any DNA from Defendant. Moreover, counsel attempted to discredit the backpack evidence in other ways by highlighting the backpack was not found on Defendant when he was arrested [and] was not found by police until a week after Defendant's arrest. Additionally, as evidence against Defendant for these crimes, the arresting officer testified that while taking Defendant into custody, Defendant stated, "I'm glad it's over. I'm tired of breaking into people's houses for a living." Considering the evidence against Defendant, this Court finds no reasonable probability the result of the proceeding would have been different even if counsel had hired a DNA expert who could testify that the backpack, which had been outside for a week after Defendant's arrest before being retrieved, did not have Defendant's DNA on it. This Court, therefore, finds counsel was not ineffective in this

respect and denies this Ground.

Resp. Ex. L at 77-78 (record citations omitted). Petitioner appealed, and the First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. O.

The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. In doing so, the Court heeds the state court's finding that Petitioner failed to demonstrate prejudice. Indeed, considering the eyewitness testimony, evidence of Petitioner's own statements to law enforcement, and the items found on Petitioner's person at the time of arrest, Petitioner cannot show that but for trial counsel's alleged error, the outcome of the proceedings would have been different. Upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of Strickland, and it is not based on an unreasonable determination of the facts in light of the evidence presented to the state court. Ground Four is denied.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. 1) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2.    The **Clerk** shall enter judgment dismissing this case with

prejudice, terminate any pending motions, and close the file.

     3.    If Petitioner appeals this denial, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[4]

     **DONE AND ORDERED** at Jacksonville, Florida, this 18th day of August, 2025.



TIMOTHY J. CORRIGAN
Senior United States District Judge

Jax-7

C:    Ralph Carol Rhodaback, #278478
      Counsel of record

---

[4] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.